UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| ) | Criminal No. 5:11-cr-98-1-JMH |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JAMES EMMANUEL SULLIVAN, ) | **MEMORANDUM OPINION AND ORDER** |
| (True spelling:James Emanuel Sullivan) ) | |
| ) | |
| Defendant. ) | |
| ) | |

** ** ** ** ** ** ** ** **

This matter is before the Court on Defendant James Emanuel
Sullivan's Motion to Suppress [DE 16] a sawed-off shotgun
discovered during the execution of a search warrant at 220
Southport Drive, Lexington, Kentucky. The United States has filed
a Response to the Motion to Suppress [DE 21]. Additionally, a
hearing on this motion was before the Court on October 26, 2011.
The Court being adequately advised, this matter is ripe for
decision.

I.   **BACKGROUND**

On May 1, 2011, Detective Jerry Curtsinger received
information from a confidential informant that Michael Ferrell and
his family were selling drugs from their home, located at 220
Southport Drive, Lexington, Kentucky. Upon investigation,
Curtsinger discovered evidence of recent pawn transactions
involving Donna Ferrell, who had provided 220 Southport Drive as
her address. He also found that both Donna Ferrell and Chad

Ferrell had provided 220 Southport as the address for their driver's licenses. Additionally, he located police records in which Michael Ferrell was reported to reside at 220 Southport Drive. Hearing testimony confirmed that Chad and Donna Ferrell are Michael Ferrell's parents. Between May 1 and May 11, 2011, Curtsinger conducted surveillance of the residence. Sometime during the eleven-day period, Curtsinger performed two trash pulls, in which he collected mail addressed to 220 Southport Drive, bearing the names of Donna and Chad Ferrell. He also discovered marijuana stems and leaves.

Although PVA records listed 220 Southport Drive as a duplex, Curtsinger did not believe that it was being used as a duplex because his investigation suggested that no one besides the Ferrell family was residing there. Curtsinger's belief was confirmed when he contacted Dr. James Davis, the owner of 220 Southport. Davis informed Curtsinger that, although the dwelling was originally designed as a duplex, the property had been used as a single-family residence for several years and he was renting it to the Ferrells as such. As indicated in Curtsinger's search warrant application, the outward appearance of the residence suggested that it was a single-family dwelling. The exterior simply bore the street number "220"– rather than "220A" and "220B," as one would expect with a duplex. While Curtsinger did observe two mailboxes on the exterior of the residence, the presence of two mailboxes was not

inconsistent with the landlord's statement that the residence was designed as a duplex. During his surveillance, Curtsinger also noticed that there was only one trash receptacle and one recycling receptacle outside of the residence.

On May 11, 2011, Curtsinger applied for and received a search warrant for 220 Southport Drive. The warrant described 220 Southport as a "two story single family residence" and indicated that officers would be searching for drugs and drug-related evidence. Curtsinger testified that when he arrived to execute the warrant, Donna Ferrell allowed him to enter the residence through the front door. Upon entry, Curtsinger noticed a door to his immediate right and a stairway to his left. The door on the right, which led to a living room, a kitchen, and bedrooms, bore no numbers or markings of any kind. The stairway on the left, which had no door, led to a landing, which also had no door or markings. The landing provided access to two bedrooms and housed a sink and a refrigerator. Each of the upper-level bedrooms had a typical bedroom door, with no outward markings or visible locks.

While officers were searching the premises, Chad, Donna, and Michael Ferrell were detained in the downstairs living room. Defendant Sullivan, a co-worker of Chad Ferrell, was not present. Officers discovered marijuana and a sawed-off shotgun in the upstairs bedroom where Defendant had been staying for several months. The Ferrells contend that, prior to the search that led to

the discovery of the shotgun, they advised the police that the
bedroom belonged to Defendant and that he paid the Ferrells weekly
rent to stay there.  Officers contend that the Ferrells mentioned
Defendant only when confronted with questions about the sawed-off
shotgun.  Officers seized the shotgun and Defendant Sullivan was
charged with possession of a sawed-off shotgun and being an
unlawful user in possession of a firearm.

## II.  DISCUSSION

Regardless of when police were advised that the bedroom in
question belonged to Defendant, they did not exceed the scope of
the search warrant in searching the bedroom.[1]  "A search warrant
for the entire premises of a single family residence is valid,
notwithstanding the fact that it was issued based on information
regarding the alleged illegal activities of one of several
occupants of a residence." *U.S. v. Ayers,* 924 F.2d 1468, 1480 (9th
Cir. 1991). While Defendant argues that 220 Southport Drive is a
duplex, and thus a warrant was required to search his living space,
220 Southport was being used as a single-family residence when the
warrant was issued and executed.  The mere presence of a roommate
does not convert a single-family home into a multi-unit property.
*See Durham v. McElynn,* 254 F'Appx 892, 896 (3rd Cir. 2007).  While

_____

[1]  Defendant's reliance on *Maryland v. Garrison,* 480 U.S. 79
(1987), is misplaced.  *Garrison* involved police officers' mistaken
entry into the wrong apartment in a multi-unit dwelling, but the
dwelling at issue here clearly was being used as a single-family
dwelling.

the PVA listed 220 Southport as a duplex, and there were two mailboxes on the exterior of the residence, all other facts lead to the conclusion that the property was a single-family dwelling. *See U.S. v. Nichols,* 344 F.3d 793, 797-98 (8th Cir. 2003) (applying a totality-of-the-circumstances analysis to determine whether a house was a multi-unit or single-family dwelling).

Pursuant to their agreement with Dr. Davis, the Ferrells leased the entire premises of 220 Southport Drive. Further, they were prohibited from subleasing the premises without obtaining Davis's approval. Chad Ferrell testified that he had not informed Davis that Defendant was staying at the residence. Further, there were no exterior or interior markings that would suggest the subdivision of the home into separate living units. There was no door separating the upper and lower levels. While Defendant characterizes the upper level of the residence as an "entirely self-contained living unit," the upper level did not contain a full kitchen or any type of living room. Notably, Michael Ferrell's bedroom was located across from Defendant's on the upper level. Michael Ferrell testified that he and Defendant visited one another's bedrooms and that he considered Defendant to be "a roommate." According to Chad Ferrell's testimony, Defendant also had access to the lower level of the residence. In fact, Chad Ferrell testified that he had seen Defendant's shotgun before, when Defendant wielded it in the lower level, scaring Ferrell's

daughter. There was only one trash receptacle outside the premises, indicating that Defendant and the Ferrells were sharing a common trash can. The circumstances, when viewed in their totality, lead to the inevitable conclusion that Defendant was simply residing with the Ferrells in their home. The latching lock on the inside of Defendant's bedroom door prevented him from locking it unless he was inside the room. Certainly if he were the occupant of a separate living unit, he would have been able to lock his door to prevent the intrusion of others while he was away, giving him any expectation of privacy. And while Chad Ferrell testified that Defendant paid rent of $125 every Friday, Defendant has offered no documentation to prove that he paid rent.

### III. CONCLUSION

Because 220 Southport Drive is a single-family residence and the search warrant described it with sufficient particularity, the search of Sullivan's bedroom was lawful and the fruits of that search shall not be suppressed. Accordingly, **IT IS ORDERED** that Defendant's Motion to Suppress [DE 16] is **DENIED.**

This the 31th day of October, 2011.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge